**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN R. FLANAGAN, | ) | Case No. 1:26-cv-789 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| UNITED STATES ARMY CORPS | ) | |
| OF ENGINEERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

The Shaker Lakes Parklands have a long and storied history in the Cleveland suburbs of Cleveland Heights and Shaker Heights.  Formed in the Nineteenth Century when the North Union Shakers settled the area and dammed Doan Brook, creating Upper Horseshoe Lake and Lower Shaker Lake, the lakes and surrounding parks house a popular nature center and wildlife in a picturesque residential neighborhood.  In 2020, the dam at Upper Horseshoe Lake was removed, restoring Doan Brook to what might have been its natural state before the Shakers settled the area, resulting in the restoration of surrounding wetlands.  That project generated local controversy at the time and raised questions about the fate of the dam on Lower Shaker Lake as various governmental actors continue to work on various projects affecting Doan Brook.

On April 2, 2026, Plaintiff Erin R. Flanagan filed this *pro se* action (though she is a lawyer) against those governmental actors.  She brings claims under federal law

relating to the process and effects of the Doan Brook restoration project on the Shaker Lakes Parklands. Then, she sought a temporary restraining order, seeking to enjoin certain work.

## STATEMENT OF FACTS

In her complaint, Plaintiff Erin Flanagan, a lawyer representing herself, alleges that the Shaker Lakes Parklands, consisting of Upper Horseshoe Lake, Lower Shaker Lake, Doan Brook, associated earthen dams, and surrounding parkland, form a continuous historic water-management landscape. (ECF No. 1, ¶¶ 2, 24 & 71, PageID #2, #5 & #12.) According to the complaint, the National Register of Historic Places recognizes this overall system as an integral element of the historic landscape. (*Id.*, ¶¶ 3 & 29, PageID #2 & #6.) In 1895, these lands were conveyed to the City of Cleveland to serve as a public park. (*Id.*, ¶¶ 5 & 27, PageID #3 & #6.) Later agreements in 1947 and 1991 between the City of Cleveland and the Cities of Cleveland Heights and Shaker Heights affirm this dedicated use for the land. (*Id.*, ¶¶ 5 & 28, PageID #3 & #6.)

According to the complaint, following a breach of the dam at Horseshoe Lake, the lake was drained in 2020 (*id.*, ¶¶ 10 & 74, PageID #4 & #13), returning Doan Brook to its original condition before the Shakers settled the area—a stream surrounded by wetlands. Now, Defendants are pursuing federal authorization using nationwide permits for projects that include substantial shoreline alteration, including placement of large quantities of riprap (large foundation stones to prevent erosion) along the Lower Shaker Lake embankment. (*Id.*, ¶¶ 12 & 13, PageID #4.)

2

In this process, Plaintiff alleges that Defendants have treated the drained condition of Horseshoe Lake as the environmental baseline, even though that alteration occurred before completion of the overall federal review process.  (*Id.*, ¶¶ 78 & 87, PageID #13 & #15.)  Also, Plaintiff worries that "[r]emoval of the Lower Lake dam or conversion of the lake into a constructed stream corridor would eliminate a defining hydrologic feature of the landscape."  (*Id.*, ¶ 38, PageID #7.)  Doing so, according to the complaint, would alter the characteristics qualifying the property for listing in the National Register of Historic Places and adversely affect fish populations, aquatic food resources, and migratory and resident birds.  (*Id.* ¶¶ 45–46 & 73, PageID #8 & #13.)

At bottom, Plaintiff challenges the use of nationwide permits because the activities she challenges are not discrete activities but "interconnected components of a single coordinated undertaking affecting a unified historic landscape and aquatic habitat system."  (*Id.*, ¶ 15, PageID #4.)  She seeks to require Defendants to comply with the procedural safeguards of federal law.  (*Id.*, ¶ 18, PageID #4; *see also id.*, ¶¶ 56 & 57, PageID #10.)  Put another way, Plaintiff challenges the segmentation of various actions affecting the Shaker Lakes as a unified whole.  (*See id.*, ¶ 96, PageID #16–17.)  Indeed, the complaint alleges that Defendants treat Doan Brook restoration as a project affecting the entire watershed, not just discrete components of it, such as Horseshoe Lake or Lower Shaker Lake.  (*Id.*, ¶¶ 98–99, PageID #17.)

Even as the federal review process proceeds, Plaintiff maintains that Defendants have taken "actions that advance the project toward implementation,

3

including engineering design, project planning, shoreline stabilization," and so on. (*Id.*, ¶ 106, PageID #18.) Although the complaint does not provide specificity about the Doan Brook restoration project (*see, e.g.*, *id.*, ¶ 8, PageID #3), the record at this stage of the proceedings supplies additional details about it (*see, e.g.*, ECF No. 6-1, ¶ 7, PageID #169). Plaintiff contends that the actions of Defendants predetermine the outcome of the project (ECF No. 1., ¶ 114, PageID #19).

Additionally, Plaintiff contends that the "historic baseline" for evaluating projects to maintain and improve the Shaker Lakes consists of both Horseshoe Lake and Lower Shaker Lake, as well as the surrounding landscape, as recognized in the National Register of Historic Places. (*Id.*, ¶ 84, PageID #14–15.) Still, the complaint also alleges that "[t]he temporary or permanent absence of standing water in an impoundment does not alter the historic character of the basin landscape recognized in the National Register listings." (*Id.*, ¶ 85, PageID #15.)

## STATEMENT OF THE CASE

### A. Parties

Based on these allegations in the complaint, Plaintiff filed suit against the United States Army Corps of Engineers, the lead federal agency responsible for compliance with Section 106 of the National Historic Preservation Act, and its regional district commander; the Northeast Ohio Regional Sewer District, allegedly the lead proponent for the Doan Brook restoration project about which Plaintiff complains; the City of Cleveland, which holds title to the property; and the Cities of Shaker Heights and Cleveland Heights, which have custodial authority over portions

4

of the parklands.  (*See id.*, ¶¶ 62–69, PageID #11–12.)  According to the complaint, these Defendants are undertaking "coordinated actions."  (*Id.*, ¶ 97, PageID #17.)

### B.      Plaintiff's Claims

Plaintiff asserts seven causes of action:  (1) she seeks review of federal agency action under Section 706 of the Administrative Procedure Act (*id.*, ¶¶ 132–41, PageID #22–25); and she alleges violations of (2) the National Historic Preservation Act (*id.*, ¶¶ 142–153, PageID #25–28); (3) the National Environmental Policy Act (*id.*, ¶¶ 154–69, PageID #28–31); (4) the Clean Water Act (*id.*, ¶¶ 170–86, PageID #32–34); (5) the Endangered Species Act (*id.*, ¶¶ 187–206, PageID #34–37); (6) the Migratory Bird Treaty Act (*id.*, ¶¶ 207–22, PageID #37–39); and (7) the Bald and Golden Eagle Protection Act (*id.*, ¶¶ 223–39, PageID #39–41).  Plaintiff seeks declaratory and injunctive relief.  (*Id.*, ¶¶ 241(A)–(B), 241(D), PageID #42–43.)  Although Plaintiff purports not to "ask the Court to determine the ultimate design of the Doan Brook restoration project" or engage in various engineering questions (*id.*, ¶¶ 17 & 240, PageID #4 & #42), she seeks an order that Defendants "preserve the status quo ante" (*id.*, ¶ 241(E), PageID #43), which the complaint makes clear would require re-creation of Horseshoe Lake.

### C.      Motion for a Temporary Restraining Order

In her motion for a temporary restraining order, Plaintiff seeks "to preserve the status quo pending resolution of this matter. . . . while allowing for routine inspection, maintenance, and emergency stabilization necessary to protect public safety," so long as those "activities do not irreversibly alter the landscape."  (ECF No. 2, PageID #47.)  More specifically, she seeks to "preserv[e] the status quo ante at

the Shaker Lakes Parklands pending completion of federally required environmental and historic-preservation review." (ECF No. 2-1, PageID #50.) She argues that Defendants are about to proceed with certain "ground-disturbing activity" and construction that will permanently alter the Shaker Lakes Parklands. (*Id.*) Further, she maintains that design work for the project is complete and bidding will commence soon. (*See* ECF No. 2-6, PageID #137.)

According to Plaintiff, pursuant to Section 106 of the National Historic Preservation Act, federal consultation regarding the Shaker Lakes Parklands remains ongoing. (ECF No. 2-1, PageID #53.) The Army Corps of Engineers serves as the lead federal agency on the project, which requires authorization under Section 404 of the Clean Water Act. (*Id.*) Although federal review remains ongoing, "Defendants have indicated that shoreline stabilization and related activities may proceed in advance of the conclusion of federal review." (*Id.*) Therefore, to ensure meaningful federal consultation, Plaintiff seeks immediate injunctive relief. Additionally, Plaintiff contends that the Army Corps has failed to consult with Tribal nations, as federal regulations require. (ECF No. 25, PageID #368.) In her view, this failure shows that the Section 106 process remains procedurally incomplete. (*Id.*, PageID #369.)

## STANDING

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction to ensure that it has the authority to proceed. *See, e.g., Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017)

(citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (citation modified); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

Ms. Flanagan, a resident of Cleveland Heights who lives less than one mile from the Shaker Lakes Parklands, represents that she "is a long-time user of the historic site and its amenities, including . . . the surrounding park landscape." (ECF No. 1, ¶ 51, PageID #9.) Further, she avers that she "regularly visits and uses the Shaker Lakes Parklands for recreation, aesthetic enjoyment, birding, historical study, and observation of the natural and cultural landscape." (*Id.*, ¶ 52, PageID #9.) Plaintiff claims that her use and enjoyment of the Shaker Lakes Parklands "will be directly and adversely affected" by Defendants actions at issue in her lawsuit. (*Id.*, ¶ 55, PageID #10.) Also, she claims procedural injury from deprivation "of the opportunity to participate meaningfully in the federal decision-making process before irreversible commitments of resources occur." (*Id.*, ¶ 56, PageID #10.)

These sorts of injuries do not appear to present an injury in fact. In standing doctrine, an "injury in fact" means an invasion of a legally protected interest which is (1) "concrete and particularized" *and* (2) "actual or imminent," not conjectural or

7

hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).  Against this standard, Ms. Flanagan's alleged injuries appear, among other things, more aesthetic, subjective, intangible, and abstract than concrete.

In *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–82 (2000), however, the Supreme Court upheld the district court's determination that the plaintiff "demonstrated sufficient injury to establish standing" in part because one of its members represented that "he lived a half-mile from [the defendant's] facility; that he occasionally drove over the North Tyger River, and that it looked and smelled polluted; and that he would like to fish, camp, swim, and picnic in and near the river between 3 and 15 miles downstream from the facility."  *Id.* at 181–82.  "Other members presented evidence to a similar effect."  *Id.* at 182.  Although "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff," the Supreme Court "held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."  *Id.* at 180–83 (citation modified) (citations omitted).

This formulation gives a single person a veto over public projects, based only on subjective or aesthetic harms (as opposed to particularized, concrete injuries to persons or property), frustrating the political process as a means for accountability and public participation.  Also, it appears out-of-step with the basic constitutional requirements to establish standing.  Indeed, it is difficult to distinguish standing

8

under *Friends of the Earth* from taxpayer standing to "employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System." *United States v. Richardson*, 418 U.S. 166, 174 (1974) (quoting *Flast v. Cohen*, 392 U.S. 83, 114 (1968)); *see also Frothingham v. Mellon*, 262 U.S. 447, 487–88 (1923).  In the face of *Friends of the Earth* and its continuing vitality, however, the Court is constrained to conclude that Plaintiff has alleged "an 'injury in fact' that is concrete and particularized and actual or imminent . . . [that] is fairly traceable to the challenged action of the defendants . . . and it is likely . . . that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180–81 (quoting *Lujan*, 504 U.S. at 560–61).

## ANALYSIS

A temporary restraining order constitutes an extraordinary and emergency measure.  *CBIZ, Inc. v. Cryan*, No. 1:24-cv-1027, 2024 WL 5443173, at *5 (N.D. Ohio July 23, 2024); *Corporate Lodging Consultants, Inc. v. Szafarski*, No. 1:21-cv-1611, 2021 WL 3709914, at *5 (N.D. Ohio Aug. 20, 2021) (quotation omitted).  It aims "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chem. Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979).  It seeks "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citation omitted).

Plaintiff bears the burden of establishing that an injunction should issue under Rule 65.  *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citations omitted).

9

Rule 65 requires a court to determine whether "specific facts in an affidavit or a verified complaint *clearly show* that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).

To determine whether to grant a temporary restraining order, a court considers whether: (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable harm without the relief requested; (3) granting the relief requested will cause substantial harm to others; and (4) the public interest will be served by granting the relief requested. *See, e.g.*, *CBIZ*, 2024 WL 5443173, at *5; *Corporate Lodging Consultants*, 2021 WL 3709914, at *5. Although no single factor is determinative, a finding that the party is likely to succeed on the merits weighs strongly. Indeed, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). On a motion for a temporary restraining order, irreparable harm looms large in the analysis. *Corporate Lodging Consultants*, 2021 WL 3709914, at *5 (collecting cases). These factors present considerations that must be balanced on the particular facts and circumstances of each case. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing cases). On the record presented, two of these considerations suffice to dispose of Plaintiff's motion.

## I. Likelihood of Success on the Merits

For a restraining order, the Court need not find a likelihood of success on the merits of each claim. Where a complaint brings multiple claims, "[t]he moving party need only show a likelihood of success on the merits on one claim." *Planned Parenthood Great Nw., Haw., Ala., Ind., & Ky., Inc. v. Cameron*, 599 F. Supp. 3d 497,

506 (W.D. Ky. Apr. 21, 2022); *see also J.P. Morgan Sec., LLC v. Duncan*, No. 2:22-cv-11732, 2022 WL 3325514, at *4 (E.D. Mich. Aug. 11, 2022).

Plaintiff fails to make a clear showing of likelihood of success on any claim. Indeed, she fails to develop any argument or to cite any authority going to the merits of many of her claims.  (*See* ECF No. 2-1, PageID #54–57.)  She does develop a couple arguments that warrant brief discussion.

Plaintiff focuses her argument on segmentation of the project.  (*Id.*, PageID #55.)  Put another way, she maintains that the Shaker Lakes Parklands constitute a unified whole, but Defendants focus their review under Section 106 of the National Historic Preservation Act on discrete parts or features, such as the Lower Shake Lake dam, instead of the project on the whole.  For this argument, Plaintiff points to 36 C.F.R. § 800.4(a)(1), which directs agency officials to "[d]etermine and document the area of potential effects."  For purposes of this regulation, the "area of potential effects" means "the geographic area or areas within which an undertaking may directly or indirectly cause alterations in the character or use of historic properties, if any such properties exist."  *Id.* § 800.16(d).  "Historic property" means "any prehistoric or historic district, site, building, structure, or object included in, or eligible for inclusion in, the National Register of Historic Places."  *Id.* § 800.16(*l*)(1).

Under this definition, as Plaintiff frames things, the Doan Brook restoration project as a whole will have at least indirect effects on the entirety of the Parklands listed on the National Register of Historic Places.  For example, a decision to rehabilitate or remove the dam on Lower Shaker Lake will necessarily have some

11

effects on Doan Brook and the restored wetlands formerly occupied by Horseshoe Lake before it was drained in 2020.  However, "[t]he area of potential effects is influenced by the scale and nature of an undertaking and may be different for different kinds of effects caused by the undertaking." *Id*. § 800.16(d).  Therefore, the question becomes whether a particular activity sought to be enjoined will have direct or indirect effects on the property listed on the National Register as a whole.  In this regard, even working within Ms. Flanagan's framing of the project, Plaintiff fails to carry her burden that any imminent activity will have such an effect.  At this stage of the proceedings, she identifies only replacement of riprap on the shoreline of Lower Shake Lake.  (ECF No. 2-1, PageID #51, #54, #58 & #60.)  But Plaintiff makes nothing more than a conclusory argument that this work will have even indirect effects on the entirety of the listed property.

Nor do the cases identified in the complaint support Plaintiff's position.  For example, in *Friends of Tims Ford v. TVA*, 585 F.3d 955, 969–70 (6th Cir. 2009), the Sixth Circuit discussed the standing of plaintiffs who owned property in one area affected by a proposed project carried out in another.  But the court did not hold, as Plaintiff suggests, that "[f]ederal environmental law prohibits agencies from dividing a single undertaking into smaller regulatory segments in order to avoid comprehensive environmental review." (ECF No. 1, ¶ 101, PageID #18.)

For these reasons, Plaintiff has not demonstrated a likelihood of success on the merits at this stage of the proceedings.  Conceivably, future work might present a different case for an injunction.  Also, identifying the direct and indirect effects of the

12

project as a whole might require factfinding more appropriate at a later stage of the proceedings.

## II. Irreparable Harm

As noted, irreparable harm plays a large role in analyzing whether to issue a temporary restraining order. *Corporate Lodging Consultants*, 2021 WL 3709914, at *5 (collecting cases). Indeed, "[a] district court abuses its discretion when it grants [a temporary restraining order] without making specific findings of irreparable injury to the party seeking the injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). A showing of some irreparable injury "is the *sine qua non* for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Friendship Materials*, 679 F.2d at 105). Absent an irreparable injury, "there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). "[A]lthough the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Id.*

Harm is irreparable where money damages do not fully compensate for the injury. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). Usually, money does not fully compensate where the nature of the injury or loss makes damages difficult to calculate. *Id.* (citations omitted).

Here, the parties focus most of their briefs and arguments on irreparable harm. Because Defendants represent that they will not solicit construction bids for the

13

project until after receiving all required permits and authorizations and do not anticipate commencement of work on the project until the second half of 2026 (and such estimates often prove optimistic), the project itself will not result in irreparable harm at this time.  (ECF No. 6, PageID #159; ECF No. 6-1, ¶ 16, PageID #171; ECF No. 12, PageID #212.)  Obviously, that representation does not address Plaintiff's complaints of procedural harm.  But Plaintiff's motion for a temporary restraining order seeks to enjoin the project itself, not any of the procedural reviews or consultations attending it.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for a temporary restraining order.  (ECF No. 2.)  The Court **SCHEDULES** a hearing in Courtroom 16B, Carl B. Stokes U.S. Courthouse, 801 West Superior Avenue, Cleveland, Ohio on May 20, 2026 at 3:30 pm to discuss next steps in this case.

**SO ORDERED.**

Dated:  May 11, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio

14