**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN R. FLANAGAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-789<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>James E. Grimes, Jr. |

**OPINION AND ORDER**

In this action involving litigation over the Shakes Lakes, the Court ordered Plaintiff Erin Flanagan to show cause why (1) the claims she asserts under the Administrative Procedure Act are ripe, (2) her allegations of violations of the Endangered Species Act satisfy the basic requirements for notice pleading, and (3) Defendants Northeast Ohio Regional Sewer District, the City of Cleveland, the City of Cleveland Heights, and the City of Shaker Heights should not be dismissed because the amended complaint asserts no claims against them. In this ruling, the Court addresses each of these issues.

**STATEMENT OF FACTS**

In her original complaint, Plaintiff Erin Flanagan, a lawyer representing herself, alleges that the Shaker Lakes Parklands, consisting of Upper Horseshoe Lake, Lower Shaker Lake, Doan Brook, associated earthen dams, and surrounding parkland, form a continuous historic water-management landscape. (ECF No. 1, ¶¶ 2,

24 & 71, PageID #2, #5 & #12; *see also* ECF No. 34, ¶ 52, PageID #468.) According to the complaint, the National Register of Historic Places recognizes this overall system as an integral element of the historic landscape. (ECF No. 1, ¶¶ 3 & 29, PageID #2 & #6; *see also* ECF No. 34, ¶¶ 60–65, PageID #470–71.) In 1895, these lands were conveyed to the City of Cleveland to serve as a public park. (*Id.*, ¶¶ 5 & 27, PageID #3 & #6.) Later agreements in 1947 and 1991 between the City of Cleveland and the Cities of Cleveland Heights and Shaker Heights affirm this dedicated use for the land. (*Id.*, ¶¶ 5 & 28, PageID #3 & #6.)

In the amended complaint, Plaintiff describes an ongoing standard permit review before the United States Army Corps of Engineers. (ECF No. 34, ¶¶ 1 & 42, PageID #460 & #466.) The Northeast Ohio Regional Sewer District seeks a permit under Section 404 of the Clean Water Act as part of the Doan Brook restoration project at the Shaker Lakes. (*Id.*; Public Notice, Permit App. No. LRB-2016-01374 (May 26, 2026).) According to the amended complaint, the project at issue broadly involves the permanent removal of the Horseshoe Lake Dam and the permanent draining of that lake; construction of a new stream channel, associated leveling of the floodplain, and creation of wetlands; various landscaping, including grading and contouring of the land and removal of a large number of trees; and other related work. (*Id.*, ¶¶ 2 & 42, PageID #460 & #467.)

On May 13, 2025, the Sewer District submitted a pre-construction notice to the Army Corps seeking authorization for the project under a general permit, Nationwide Permit 27. (ECF No. 20-1, ¶ 10, PageID #299.) Because this general permit does not

authorize dam removal, the Army Corps determined that review of the project needs to follow standard individual permitted processes. *See* Public Notice, Permit App. No. LRB-2016-01374 (May 26, 2026). According to the amended complaint, these permitting processes, which include those under Section 401 and Section 404 of the Clean Water Act, Section 106 of the National Historic Preservation Act, and the Endangered Species Act, remain ongoing. (ECF No. 34, ¶ 3, PageID #461.) At bottom, while permitting activities continue, the amended complaint alleges that the federal Defendants rely on various prior agency determinations and agreements. (*Id.*, ¶ 10, PageID #462.) No final permit for the project has issued. (*Id.*, ¶ 43, PageID #467.)

**STATEMENT OF THE CASE**

On April 2, 2026, Plaintiff filed suit against Defendants the United States Army Corps of Engineers and its regional district commander; the Northeast Ohio Regional Sewer District; the City of Cleveland; the City of Cleveland Heights; and the City of Shaker Heights. (ECF No. 1.) At the same time, Plaintiff filed an emergency motion for a temporary restraining order (ECF No. 2), which Defendants opposed (ECF No. 6; ECF No. 12; ECF No. 16; ECF No. 20.) On May 11, 2026, the Court denied Plaintiff's motion for a temporary restraining order. (ECF No. 27.)

Following a hearing (ECF No. 29), Plaintiff filed an amended complaint (ECF No. 34.) In the amended complaint, Plaintiff asserts three counts under the Administrative Procedure Act. She brings Count I against the federal Defendants, alleging that they are using prior consultation activities under Section 106 of the National Historic Preservation Act as applicable to the current project and permitting

process. (*Id.*, ¶¶ 225–33, PageID #495–96.) In Count II, Plaintiff challenges the federal Defendants' continued reliance on prior agency determinations notwithstanding the transition from reliance on a nationwide permit to an individual permitting process. (*Id.*, ¶¶ 234–43, PageID #497.) Specifically, she seeks review "of the analyses, findings, evaluations, determinations, memoranda, and administrative-record materials supporting continued applicability" of a prior agreement dated April 16, 2026 in light of the subsequent shift to standard permitting review. (*Id.*, ¶ 242.) Plaintiff asserts Count III against the federal Defendants, seeking review of their determination that prior consultation and analysis remain sufficient as the agency proceeds with standard permitting. (*Id.*, ¶¶ 244–49, PageID #498.)

In Count IV, Plaintiff asserts a claim under the citizen suit provisions of the Endangered Species Act against the federal Defendants. (*Id.*, ¶¶ 250–65, PageID #499–501.) Plaintiff seeks a declaratory judgment and to set aside, vacate, or remand agency actions in the present standard permitting process that rely on prior determinations under the nationwide permit. (*Id.*, PageID #501–02.)

The Court ordered Plaintiff to show cause why the APA claims are ripe, the Endangered Species Act claim satisfies the pleading standard in Rule 8 of the Federal Rules of Civil Procedure, and Defendants other than the federal Defendants should not be dismissed. (ECF No. 42, PageID #551–52.) After Defendants briefed the issues, Plaintiff sought to file a reply (ECF No. 52), which the Court **GRANTS**.

## ANALYSIS

### I. Administrative Procedure Act (Counts I, II & III)

Under the Administrative Procedure Act, judicial review extends to "final agency action for which there is no other adequate remedy in a court" or otherwise "made reviewable by statute." 5 U.S.C. § 704. For an agency action to be "final" and subject to review, the action must first represent the "consummation of the agency's decisionmaking process" and, second, be one by which "rights or obligations have been determined or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted).

First, the challenged actions do not meet the finality requirement. Plaintiff identifies three components of the ongoing review process actions as "final": the Army Corps' present determination concerning the identity of the project, the continuing applicability of a memorandum of agreement dated April 16, 2026, and the continuing sufficiency of the Army Corps' existing Section 106 analysis in the standard permitting review. (ECF No. 34, ¶¶ 231, 243 & 245, PageID #496–98.) An action that is part of an ongoing review process may still represent the consummation of an agency's decision-making process. *See U.S. Army Corps of Eng'rs v. Hawkes Co.,* 578 U.S. 590, 597–600 (2016) (classifying a jurisdictional determination as final and reviewable before landowners completed the Section 404 permitting process). However, the project at issue remains unchanged and subject to ongoing federal review, and the Section 106 consultation remains contingent on the Corps' permit decision. At this point in time, the actions that Plaintiff challenges remain "of a

merely tentative or interlocutory nature . . . such that judicial review of the action would disrupt the orderly process of adjudication." *Berry v. United States Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016) (internal quotations and citations omitted).

Second, regardless of finality, Plaintiff fails to identify any "legal consequences" or obligations flowing from the challenged actions. *Bennett*, 520 U.S. at 177–78. The challenged action must have a "sufficiently direct and immediate impact" on the party challenging it. *Berry*, 832 F.3d at 633 (6th Cir. 2016) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)). Count I does not identify any adverse consequence from the Army Corps' identification of the project as the same project previously reviewed. (ECF No. 34, ¶¶ 224–33, PageID #495–96.) Count I alleges only that the Army Corps' position "has continuing operative effect during ongoing federal review" and is "presently operative." (*Id.* at ¶¶ 226 & 231, PageID #495–96.) Plaintiff notes that the Army Corps' position affects the scope of the federal review and the procedural obligations the Army Corps recognizes, but that does not describe a right or obligation that the agency's position has determined. (ECF No. 50, PageID #569.) An effect on the agency's ongoing review, without more, does not a have "sufficiently direct and immediate impact" on Plaintiff. *Berry*, 832 F.3d at 633.

Similarly, Counts II and III do not allege legally adverse effects from the existing Section 106 review. (ECF No. 34, ¶¶ 234–49, PageID #497–98.) Count II alleges that the permitting structure now differs from the one in place when the memorandum of agreement was executed and that the Army Corps nevertheless treats the memorandum as controlling. (*Id.* at ¶¶ 238–39, PageID #497.) But

Count II does not identify a difference between the nationwide and standard permit processes that would make the memorandum inoperative or identify any other consequence from its continued application that requires interlocutory review or otherwise makes its continued application sufficiently final to warrant judicial review. (ECF No. 51, PageID #585.) Count III alleges that the Army Corps continues to treat prior consultation as sufficient and seeks review of "any determination" that additional consultation is unnecessary. (ECF No. 34, ¶¶ 245–48, PageID #498.) Framing a challenge in this way fails to identify a decision that has determined rights or obligations. *Bennett*, 520 U.S. at 178. Without a direct and immediate impact on Plaintiff, these counts do not challenge an action from which "legal consequences" flow. *Berry*, 832 F.3d at 633. At least not yet.

The memorandum of agreement is contingent on the issuance of a permit; therefore, it has no effect on current legal rights or obligations. (ECF No. 2-3, PageID #70.) Plaintiff responds that an executed memorandum of agreement evidences compliance with Section 106 and governs the project. (ECF No. 52-1, PageID #604 (citing 36 C.F.R. § 800.6(c)).) Whatever effect that regulation might have, this memorandum takes effect only upon a permit decision, so it does not yet alter Plaintiff's rights or obligations.

Plaintiff cites multiple cases for the proposition that an agency determination may be final even though a larger permitting process remains unfinished. (ECF No. 50, PageID #570; ECF No. 52-1, PageID #603.) While that proposition is correct, Plaintiff concedes that not "every agency communication or intermediate step during

the Standard Permit process is immediately reviewable." (ECF No. 50, PageID #570.) In the cases on which Plaintiff relies, the actions at issue carried concrete legal consequences that the actions here lack. For example, in *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 596–99 (2016), the Army Corps approved a jurisdictional determination, which its regulations treat as a final agency action subject to administrative appeal and bound the Army Corps for five years and the government in later litigation. In *Sackett v. EPA*, 566 U.S. 120, 125–27 (2012), a compliance order required landowners to restore their property under an agency-approved work plan and to give the agency access to their property and records. It also exposed them to penalties, restricted their ability to obtain a permit from the Army Corps, and was not subject to further agency review. Plaintiff identifies no comparable obligation, penalty, or binding effect flowing from the actions challenged in this case. (*See* ECF No. 34, ¶ 97, PageID #476.)

For these reasons, the challenged agency decisions do not satisfy the two-prong test for finality. *Bennett*, 520 U.S. at 177–78. Therefore, the claims asserted in Counts I, II, and III under the Administrative Procedure Act are not ripe for review. Accordingly, the Court **DISMISSES** these claims **WITHOUT PREJUDICE**.

## II. Endangered Species Act (Count IV)

Plaintiff fails to demonstrate how Count IV meets the basic Rule 8 notice pleading standard. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to give defendants fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2). While

Plaintiff's original complaint identified the species at issue (ECF No. 1, ¶ 192, PageID #35), the first amended complaint fails to do so (ECF No. 34, ¶¶ 250–65, PageID #499–501). This omission leaves Defendants unable to determine the nature of any alleged injury. Also, it affects the nature of Plaintiff's claim regarding the Section 7 consultation obligation. That section is directed at the listed species, or critical habitat, that the agency action may affect. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14. For that reason, the species in question informs the review. Whether the species is a bird, a fish, or something else affects which habitat and which project activities must be evaluated, and so what consultation is required. A citizen-suit plaintiff must ultimately show an "injury to identifiable members of the protected species" caused by the challenged activity. *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1156 (9th Cir. 2024.) Plaintiff identifies no species, so Defendants cannot tell what injury might be at issue or what activity might have caused it. For these reasons, the Court **DISMISSES** Count IV.

**III. The Remaining Defendants**

In the amended complaint, Plaintiff asserts four causes of action—none against the Northeast Ohio Sewer District, the City of Cleveland, the City of Cleveland Heights, or the City of Shaker Heights. (ECF No. 34, PageID #495–502.) Plaintiff represents that she asserts claims against these Defendants to the "extent permitted by the specific statutory causes of action" but concedes that the first amended complaint lists the operative causes of action as against only federal Defendants. (ECF No. 50, PageID #574.)

Plaintiff maintains that Rule 20(a) and Rule 21 "distinguish between the legal basis for a claim and the parties who may properly participate in an action." (ECF No. 50, PageID #575.) But Rule 20(a) permits joinder of a person as a defendant only where "any right to relief is asserted against them." Fed. R. Civ. P. 20(a)(2)(A). And Rule 21 provides that misjoinder of parties (those on whose behalf or against whom claims are brought) is not a ground for dismissal of an action and authorizes a court to add or drop parties or sever claims. Fed. R. Civ. P. 21. Without a claim against these Defendants, it is difficult to see a basis in law for holding them in this suit.

Plaintiff concedes that the first amended complaint "does not seek to impose APA liability upon any non-federal defendant." (ECF No. 50, PageID #575.) Nor could she. "Administrative Procedure Act claims and mandamus claims may be asserted only against federal agencies and their employees." *Griffith v. Bell-Whitley Cmty. Action Agency*, 614 F.2d 1102, 1105 (6th Cir. 1980); *Southwest Williamson Cnty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1035–36 (6th Cir. 1999) (holding that APA claims against a non-federal party should be dismissed for failure to state a claim).

Undoubtedly, the named non-federal Defendants have strong connections to the project currently under review as landowners and project sponsors. However, the Rules require more. Because the amended complaint does not assert any cause of action against these Defendants, the Court **DISMISSES** them from this action.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for leave to file a reply *instanter* (ECF No. 52) and **DISMISSES WITHOUT PREJUDICE** the first amended complaint.

**SO ORDERED.**

Dated: October 13, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio